

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-4-2006

# USA v. Gaskin

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4135

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Gaskin" (2006). *2006 Decisions.* Paper 612.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/612

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  05-4135

UNITED STATES OF AMERICA

v.

JOE E. GASKIN, JR.,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No.: 04-CR-387
District Judge: The Honorable Sylvia H. Rambo

_____

Argued July 14, 2006

Before: SMITH, WEIS, and ROTH, *Circuit Judges*

(Filed: August 4, 2006)

Dennis E. Boyle (Argued)
1525 Cedar Cliff Drive
Camp Hill, PA 17011
            *Counsel for Appellant*

Gordon A. D. Zubrod (Argued)
Office of United States Attorney
228 Walnut Street
P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA  17108
            *Counsel for Appellee*

SMITH, *Circuit Judge.*

Joe Gaskin appeals from his conviction for violating 18 U.S.C. § 2241(c) by crossing state lines to engage in a sexual act with a minor under 12 years of age. He asserts that the District Court erred in denying his motion to suppress statements that he gave to law enforcement agents on two occasions. Gaskin contends that these statements were involuntary because they were induced by the law enforcement agents' promise that he would not be arrested regardless of what he said. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise appellate jurisdiction under 28 U.S.C. § 1291. For the reasons set forth below, we will affirm.

Our review of the District Court's denial is subject to a mixed standard of review. The District Court's findings of fact are reviewed for clear error. *United States v. Walton*, 10 F.3d 1024, 1027 (3d Cir. 1993). The District Court's determination that Gaskin's statements were made voluntarily is subject to plenary review. *Arizona v. Fulminante*, 499 U.S. 285, 287 (1991); *Walton*, 10 F.3d at 1027.

Because Gaskin does not challenge the District Court's findings, the facts set forth below are drawn from the District Court's opinion. Gaskin, an over-the-road truck driver, traveled from Pennsylvania to Connecticut accompanied by a young girl and her brother. The young girl wet the bed in the cab in which she and her brother were sleeping. At a

2

truck stop in New Jersey, Gaskin sent the young boy into the truck stop to play video games so he could take care of the soiled bed. In the boy's absence, Gaskin unlawfully touched the young girl, and after masturbating in her presence, ejaculated on her. The young girl reported this conduct and Gaskin became the prime suspect in a criminal investigation.

Federal and local law enforcement agents met with Gaskin initially at his employer's place of business. They advised him of the reason for their visit, informed him that he was free to leave, and explained that he did not have to speak with them. Gaskin was also informed that he was not under arrest at that time and would not be arrested that day regardless of what he said. During the interview, Gaskin admitted that he had engaged in the above unlawful conduct. After making this admission, Gaskin asked for assurances from the agents that he would not be arrested. Sutherland prepared a written statement, which repeated the advice that the agents gave to Gaskin at the beginning of the interview. The statement read: "Scott Sutherland, Jeff Goble, and Bob Pace have advised me I am free to leave at any time. I will not be arrested at the conclusion of our conversation today regardless of what was said." The agents and Gaskin signed the statement.

Thereafter, Gaskin took two breaks, leaving the interview room unaccompanied. Before terminating the interview, Gaskin informed the agents that his statements "could send him to jail for 15 years." In addition, Gaskin acknowledged that if he admitted to engaging in sodomy, oral sex or vaginal intercourse with the young girl he could receive a

3

life sentence in certain states. On the heels of that remark, Gaskin terminated the interview. Consistent with their earlier advice, the agents told Gaskin that "if charges were forthcoming, they would contact him at that time." Gaskin thanked the agents for their professionalism and kindness and asked to leave the interview unaccompanied. The agents granted his request.

A year later, during a second meeting at his home, Gaskin acknowledged his earlier statements. Thereafter, an indictment was returned against him, charging him with violating 18 U.S.C. § 2241(c).

Gaskin moved to suppress both statements, contending that they occurred in a custodial setting and that he had not been given his *Miranda* warnings. Additionally, he asserted that these statements were induced by the agents' promise not to arrest him. The second statement, in Gaskin's view, warranted suppression because it was "fruit of the poisonous tree" of the first statement.

The District Court denied the motion to suppress. It concluded that neither statement was made in custody. It also rejected Gaskin's contention that his admissions during the interview at his place of employment were involuntary. As a result, the District Court found no basis for suppression of the second statement uttered in his home.

Thereafter, Gaskin entered a conditional *nolo contendere* plea, allowing him to seek review of the denial of his suppression motion. On appeal, Gaskin challenges only the District Court's determination that his statements were voluntarily given.

In *Schneckloth v. Bustamonte*, 412 U.S 218 (1973), the Supreme Court confirmed

4

that the test for the admissibility of a confession is

> the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

*Id.* at 225-226. The Supreme Court further instructed that the determination of whether a defendant's will has been overborne requires an assessment of the totality of the circumstances. *Id.* at 226.

In *United States v. Walton*, 10 F.3d 1024 (3d Cir. 1993), we considered the voluntariness of a defendant's confession to a law enforcement agent where the agent referenced his long time friendship with the defendant and encouraged him to speak "off the cuff." There, we instructed that we "must examine the statement from [the defendant's] viewpoint" to determine "whether the defendant reasonably perceived the alleged promise as he asserts" and whether defendant "actually believed that the agent in question intended the promise as alleged." *Id.* at 1029 (citations omitted). We instructed that "the real issue is not whether a promise was made, but whether there was a causal connection between [the] assurance and [the defendant's] statement." *Id.* at 1029.

Here, the District Court appropriately applied this standard and we find no error in its conclusion that in light of the all of the circumstances Gaskin's statements were voluntary. Gaskin argues that his confession during the October 2003 interview at his employer's place of business was involuntary because he was promised in writing that he would not be arrested regardless of what he said. Gaskin ignores the fact that the written

promise, which tracked the earlier advice of the agents, included a critical temporal component.  The promise indicated that Gaskin would "not be arrested at the end of our conversation *today*."  We cannot embrace Gaskin's interpretation, which completely eliminates a qualification of the promise given by the agents.

Gaskin asserts that he believed the promise meant that he would never be arrested, and he cites his limited education and criminal experience to buttress his claim.  We, like the District Court, are not persuaded.  Gaskin may have had only a general equivalency diploma, but he had obviously educated himself on the criminal penalties facing child molesters and knew that it was best to limit to some extent his revelations.  We agree with the District Court that Gaskin's statements about the risk of any further admissions on his part "strongly suggest that [he] knew he could be arrested at some point for what he told the [agents]" and that he "did not actually believe the officers' promise as he asserts."

Nor do we find the length of the interview, its location or the presence of three law enforcement agents as coercive factors.  The interview initially covered biographical information and Gaskin generously informed the officers of two previous criminal convictions for having sexual contact with children, his family history, including his three marriages, and his employment history.  After denying responsibility for the conduct that the agents were investigating, Gaskin inculpated himself and sought the agents' written assurance that he would not be arrested that day.  He then took two breaks before terminating the interview.  These facts demonstrate that Gaskin controlled the course of much of this interview.  That the interview was neither overbearing nor coercive is

6

reflected by the fact that Gaskin thanked the agents for their professionalism at its conclusion and that his request to leave on his own was granted.

In sum, we conclude that Gaskin's first interview at his employer's place of business was voluntary. Because the first interview was not constitutionally infirm, it did not taint the second interview in Gaskin's home. Accordingly, the District Court's denial of the motion to suppress was not error. We will affirm the judgment of the District Court.